UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

<u>Nicole L'Etoile</u>

     v.                       Civil No. 06-cv-390-JL
                                   Opinion No. 2008 DNH 168

<u>New England Finish
Systems, Inc.</u>

**O R D E R**

The plaintiff, Nicole L. L'Etoile, has sued her former employer, New England Finish Systems, Inc. ("New England Finish") for discrimination, including a hostile work environment, and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1), 2000-e-3(a). L'Etoile worked as a taper for the company, a drywall contractor, from early 2002 until her termination in the spring of 2004. This court has jurisdiction under 28 U.S.C. § 1331 (federal question). Each side has filed a number of motions in limine seeking to exclude certain evidence from the upcoming trial. The court heard argument on these motions at the final pre-trial conference in this matter on September 4, 2008. Based on those arguments, as well as those set forth in the parties' filings, the court makes the following rulings on the motions in limine.

I.   **L'Etoile's motion to exclude the finding of "No Probable**
     **Cause" by the New Hampshire Human Rights Commission**

Prior to L'Etoile's commencement of this action, she had

filed a charge of discrimination against New England Finish with

the New Hampshire Human Rights Commission ("NHHRC"), alleging,

inter alia, the same unlawful conduct.  Following an

investigation, the NHHRC found that there was no probable cause

for the charge.  That finding, unaccompanied by any explanation,

analysis, or subsidiary findings, was announced in a letter to

the parties' counsel.  The Equal Employment Opportunity

Commission ("EEOC") subsequently adopted the NHHRC's finding,

again, without any accompanying explanation.  L'Etoile moves to

exclude any evidence of the NHHRC's or the EEOC's finding under

Rule 403 of the Federal Rules of Evidence.[1]

---

[1]  New England Finish argues that, under the prevailing law,
such "findings should be admitted when they are deemed to be
trustworthy."  It is true that the Federal Rules of Evidence
recognize an exception to the hearsay rule, in civil actions, for
"factual findings resulting from an investigation made pursuant
to authority granted by law, unless the sources of information or
other circumstances indicate lack of trustworthiness."  Fed. R.
Evid. 803(8)(C).  But the "trustworthiness" of agency findings
resolves only the hearsay problem; it does not also mean that
they are admissible notwithstanding Rule 403.  See, e.g.,
Paolitto v. John Brown E.&C., Inc., 151 F.3d 60, 64-65 (2d Cir.
1998) (noting that, with reference to EEOC reports under Rule
803(8)(C), "the fact that evidence is within an exception to the
hearsay rule does not by itself make it admissible per se").

Relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. The First Circuit has upheld the use of this rule to exclude a finding of "reasonable grounds to believe that unlawful discrimination has occurred" by the Maine Human Rights Commission from the ensuing trial of the discrimination claim because "such an agency determination, unaccompanied by relevant facts, tends to be more prejudicial than probative." <u>Patten v. Wal-Mart Stores E., Inc.</u>, 300 F.3d 21, 26-27 (1st Cir. 2002).

This court agrees with that approach here. Neither the NHHRC's nor the EEOC's "finding" of no probable cause for L'Etoile's complaint offers any explanation of why or how the agency reached that conclusion, giving the findings little probative value. New England Finish responds that the findings likewise carry little risk of unfair prejudice, but, assuming that is true, other criteria under Rule 403--"considerations of undue delay, waste of time, or needless presentation of cumulative evidence"--weigh heavily against admitting them. That much is clear from the briefing on the motion in limine, which consists largely of L'Etoile's attacks on, and New England

3

Finish's defense of, the methods of the NHRRC's investigator. Allowing this battle to play out at trial would expend significant resources for little benefit.  As the court of appeals observed in <u>Patten</u>, the conclusory findings have little probative force anyway, and would distract the jury from its ultimate task, which is to decide whether the alleged acts of discrimination and retaliation in fact occurred, not whether the NHHRC correctly decided that they likely did not.

A number of courts have relied on similar concerns in excluding, or upholding the exclusion of, agency resolutions of employment discrimination charges, i.e., the "likelihood that the trial will deteriorate into a protracted and unproductive struggle over how the evidence admitted at trial compared to the evidence considered by the agency."  <u>Paolitto</u>, 151 F.3d at 65; <u>see also</u>, <u>e.g.</u>, <u>Coleman v. Home Depot, Inc.</u>, 306 F.3d 1333, 1347 (3d Cir. 2002); <u>Hall v. W. Prod. Co.</u>, 988 F.2d 1050, 1058 (9th Cir. 1993); <u>Tulloss v. Near N. Montessori Sch., Inc.</u>, 776 F.2d 150, 153-54 (7th Cir. 1985); <u>Johnson v. Yellow Freight Sys., Inc.</u>, 734 F.2d 1304, 1309-10 (8th Cir. 1984); <u>Cook v. Hatch Assocs.</u>, No. 02-065A, 2007 WL 1267023, at *2-*3 (W.D.N.Y. Apr. 30, 2007).  In line with these and other like decisions, the

court grants L'Etoile's motion to exclude evidence of the findings of no probable cause by the NHHRC and EEOC.[2]

## II.   The parties' motions to exclude events not involving L'Etoile's employment at New England Finish

L'Etoile seeks to prevent New England Finish from presenting evidence that no other woman besides her has complained about sex discrimination at the company and that, since she left, another woman has worked there without incident. New England Finish, in turn, seeks to prevent L'Etoile from presenting evidence that women who worked at the company before her also experienced sex discrimination.  Each side characterizes the other's evidence as irrelevant and unduly prejudicial.  See Fed. R. Evid. 402, 403.

_____

[2]  New England Finish points out that L'Etoile has not challenged, and in fact has announced her plans to introduce, certain materials from the NHHRC's investigative file, namely, the investigator's notes of her meetings with New England Finish's employees.  Without knowing precisely what these materials are, however, the court cannot rule on their admissibility at this time, because it must "determine, on a case-by-case basis, what, if any, [NHHRC] investigator materials should be admitted at trial."  Smith v. Mass. Inst. of Tech., 877 F.2d 1106, 1113 (1st Cir. 1989) (quoting Gillin v. Fed. Paper Bd. Co., 479 F.2d 97, 99 (2d Cir. 1973)).  As the court pointed out at the final pre-trial conference, however, it is unlikely that the NHHRC investigator's notes of her interviews with any witnesses in this case would be admissible.  See, e.g., United States v. Casoni, 950 F.2d 893, 913-14 (3d Cir. 1991).

There is substantial precedent--including from the First Circuit--recognizing that evidence of an employer's treatment of other employees of the same protected class as the plaintiff is admissible, under Rule 404(b) of the Federal Rules of Evidence, on the question of whether the employer acted with the prohibited discriminatory intent in its actions toward the plaintiff.  See Cummings v. Std. Register Co., 265 F.3d 56, 63 (1st Cir. 2001); Brown v. Trs. of Boston Univ., 891 F.2d 337, 349-50 (1st Cir. 1989); see also, e.g., Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1286 (11th Cir. 2008); Ansell v. Green Acres Contracting Co., 347 F.3d 515, 520-25 (3d Cir. 2003); Heyne v. Caruso, 69 F.3d 1475, 1479 (9th Cir. 1995); Spulak v. K Mart Corp., 894 F.2d 1150, 1156 (10th Cir. 1990); Elion v. Jackson, 544 F. Supp. 2d 1, 8-9 (D.D.C. 2008); Zubulake v. UBS Warburg LLC, 382 F. Supp. 2d 536, 544 (S.D.N.Y. 2005). This is true whether the evidence in question reflects favorably or unfavorably on the employer's treatment of those employees, or whether the treatment occurred prior or subsequent to the events of which the plaintiff complains.  See Ansell, 347 F.3d at 523-24; Brown, 891 F.2d at 350; Elion, 544 F. Supp. 2d at 8-10.[3]  As the Supreme Court recently held, "such evidence is

---

[3]  Some of these courts have recognized that, as a logical matter, "[s]ubsequent actions by an employer against co-workers

neither per se admissible nor per se inadmissible,"
Sprint/United Mgmt. Co. v. Mendelsohn, 128 S. Ct. 1140, 1143
(2008), but "depends on many factors, including how closely
related the evidence is to the plaintiff's circumstances and
theory of the case."   Id. at 1147.

Neither party's arguments in support of or objection to the
motions in limine address this well-established body of law.
Instead, each party takes the internally inconsistent position
that its evidence of other women's experiences at New England
Finish is relevant, but the other party's is not.  For this
reason, the court must deny the broad-based motions in limine in
large part.  This ruling, however, is without prejudice to
renewal of the objections to specific examples of the challenged
evidence when it is offered at trial, keeping in mind the First
Circuit's admonition that such evidence may be admissible even
if "it cover[s] different time periods, different supervisors,
and different areas of the company."  Cummings, 265 F.3d at 63.
So, before either party attempts to introduce any such evidence,
it shall make a detailed proffer as to the nature of the
treatment at issue and how it relates to L'Etoile's

---

may be less probative of an employer's intent than prior
actions," but have nevertheless refused to deem subsequent acts
irrelevant in all circumstances.  Ansell, 347 F.3d at 524; see
also Elion, 544 F. Supp. 2d at 9.

circumstances and the parties' theories of liability and
defense,[4] see Mendehlson, 128 S. Ct. at 1147.

There is some testimony challenged by New England Finish,
however, that is obviously irrelevant to the issue of the
company's intent in its actions toward her, namely, evidence of
discrimination experienced by other women while working for
different companies altogether.  L'Etoile offers another theory
of relevance in support of some of this testimony:  that
"[e]vidence of the harassment of third parties can help to prove
a legally cognizable claim of a hostile environment."
Hernandez-Loring v. Universidad Metropolita, 233 F.3d 49, 55 n.4
(1st Cir. 2000).  That is correct, but much of the harassment of
other women alleged here, at least as proffered in L'Etoile's
objection, does not appear to have ever infected her working
environment at New England Finish.

Indeed, L'Etoile admits that one of the women she wants to
call as a witness to these events, Monique Fuhrmann, never even
worked for New England Finish, but maintains that her

---

[4]   The court also cautions New England Finish that, by
offering evidence of how its female employees were treated
subsequent to L'Etoile's termination, the company may open the
door to evidence that it implemented a sexual discrimination and
harassment policy during that time, despite its objection to that
evidence as inadmissible proof of a "subsequent remedial
measure."  Fed. R. Evid. 407.

experiences at other companies are admissible to corroborate L'Etoile's claim that she was hired only when New England Finish had a job where it was required to employ a woman, then laid off as soon as that job ended.  It suffices to say that this proffered testimony as to why other employers laid off Fuhrmann is not probative of why New England Finish laid off L'Etoile.

Nor could the sexist comments Fuhrmann--or any of the other women tapers L'Etoile intends to call as witnesses--allegedly heard while working for a different employer have contributed to the hostility of L'Etoile's work environment at New England Finish.  Some courts have taken a broad view of "environment" in this context, holding that harassment of co-workers may serve as evidence in a hostile environment suit, even where it was unknown to the plaintiff.  See Hurley v. Atl. City Police Dep't, 174 F.3d 95, 114-15 (3d Cir. 1999); Perry v. Ethan Allen, Inc., 115 F.3d 143, 150-51 (2d Cir. 1997); I Barbara T. Lindemann & Paul Grossman, Employment Discrimination Law § 19.IV.B.3, at 1405-06 (4th ed. 2007).  But even these authorities do not go so far as to suggest that a plaintiff may support her hostile environment claim with evidence that women were harassed while working for other companies; such evidence is relevant to neither the plaintiff's "general work atmosphere," Perry, 115

F.3d at 150, nor whether the employer should have been on notice of the harassment of the plaintiff,[5] <u>Hurley</u>, 174 F.3d at 111.

Again, what happened to other women at other companies is simply irrelevant to what happened to L'Etoile at New England Finish; it is that defendant, and not the entire drywall industry, that is on trial for sex discrimination.  So none of the witnesses will be permitted to testify as to their experiences working for companies besides New England Finish. The company's motion in limine to exclude evidence of events prior to L'Etoile's hiring is granted insofar as it challenges that testimony, including the proffered testimony of Fuhrmann in its entirety.

L'Etoile has a fallback position for introducing the testimony of the other female tapers (besides Furhmann): because, for the most part, they do not specifically say in their proffered statements when they experienced the alleged harassment, and because each of them worked for New England Finish at some point, the harassment may well have occurred during their employ at New England Finish.  Thus, L'Etoile's argument goes, New England Finish's claim to the contrary is

---

[5]    In any event, the parties agreed at the final pre-trial conference that New England Finish's knowledge of the harassment allegedly experienced by L'Etoile at the hands of her foremen is not at issue in this case.

simply "a bare [*sic*] faced assumption that cannot form the basis for the exclusion of this . . . testimony." But this argument gets it backwards. As the party seeking to offer this evidence, L'Etoile has the burden of laying the proper foundation for its admissibility, which includes a showing that it is at least marginally relevant because the witnesses experienced the alleged harassment while working for New England Finish, as opposed to an entirely different outfit. Unless she can do so, these witnesses cannot testify about their experiences, because, again, what happened to them at other companies has no relevance to what happened to L'Etoile at New England Finish, or why.[6]

New England Finish also challenges anticipated testimony by Francis Galvin, who employed L'Etoile "[s]ometime between 1980-1991," to the effect that she was an "excellent taper." L'Etoile argues that, "by showing that another employer appraised the value of her work as excellent," this testimony is relevant to rebut New England Finish's defense that it terminated her because of concerns over her performance, rather than because of her sex.

---

[6] This is not to say that, simply because a witnesses claims to have been harassed while working at New England Finish, her testimony about that experience is automatically admissible. Again, the court must consider "how closely related the evidence is to the plaintiff's circumstances and theory of the case." Mendelsohn, 128 S. Ct. at 1147.

This argument essentially concedes that L'Etoile wants to use evidence of her prior acts, i.e., her "excellent" work for another employer, to show that she acted in conformity therewith, i.e., that she did excellent work for New England Finish as well.  That is not permitted under Rule 404(b), as courts have ruled in excluding evidence of the quality of the plaintiff's work for prior companies from the trials of employment discrimination claims.  <u>See</u> <u>Neuren v. Adduci, Mastriani, Meeks & Schill</u>, 43 F.3d 1507, 1510-11 (D.C. Cir. 1995); <u>Zubulake</u>, 382 F. Supp. 2d at 540-41; <u>accord</u> <u>Brown</u>, 891 F.2d at 348 (ruling that evidence of plaintiff's reputation for outstanding work had been erroneously admitted in the trial of her discrimination claim where the defendant had no knowledge of it).  So Galvin will not be permitted to testify to the work that L'Etoile--or, for that matter, her sister--did for him prior to their employment at New England Finish.  New England Finish's motion is granted insofar as it challenges that proffered testimony.

## III.  <u>New England Finish's motion to exclude hearsay statements</u>

New England Finish seeks to exclude what it characterizes as a variety of "hearsay statements" that L'Etoile intends to introduce at trial.  In response, L'Etoile argues that the

challenged statements either are not offered for their truth, or
fit within one of the recognized hearsay exceptions.  The court
is unconvinced of either theory and, furthermore, sees
foundational problems with many of the statements, at least on
the record as it stands.

First, New England Finish challenges a number of statements
that L'Etoile attributes to her co-workers at the company to the
effect that one of her foreman, Roger Hallee (or, in one case,
an unspecified "they," which the parties assume was also
intended to refer to Hallee) did not want women working there.
New England Finish argues that (a) because none of these
statements (save one) is attributed to any particular co-worker,
they are nothing more than "gossip" devoid of evidentiary value,
and (b) all of the statements are inadmissible hearsay anyway.

L'Etoile does not respond to the first of these arguments,
which is fully supported by the First Circuit's decision in
Vazquez v. Lopez-Rosario, 134 F.3d 28, 34-35 (1st Cir. 1998),
upholding the exclusion of statements by co-workers that the
plaintiff's supervisor disliked him from the summary judgment
record on his political discrimination claim because "nothing in
the record identifies the sources of this information."  Here,
L'Etoile has likewise made no effort to identify who the co-
workers were or, moreover, how they came to know that Hallee did

not like working with women, which presents the same
foundational shortcoming.

As to New England Finish's hearsay objection, L'Etoile
responds that the statements are admissible as evidence of
Hallee's character under Rule 803(21)'s hearsay exception.  But
Hallee's character for sexism is not at issue in this case,
making the statements irrelevant.  See Schweitzer-Reschke v.
Avnet, Inc., 881 F. Supp. 530, 532-33 (D. Kan. 1995).[7]  As that
court reasoned, while Rule 404(b) allows evidence of particular
acts to show discriminatory intent in a sex discrimination case,
see also Part II, supra, Rule 404(a) does not permit the use of
reputation evidence for that purpose.[8]

---

[7]  L'Etoile cites Jones v. Lyng, 669 F. Supp. 1108, 1115
(D.D.C. 1986), where the court, in making findings and rulings
following a bench trial of a whistleblower's claim that he had
been fired for complaining about sexual harassment of other
employees by his superiors, noted that one of those men "had a
widespread reputation . . . as a 'womanizer.'"  But the court
does not appear to have relied on this evidence to find that the
superior in question acted in conformity with that reputation
and, moreover, did not address whether doing so would be
appropriate as a matter of evidence law.  It would not be, for
the reasons stated in the main text:  while Rule 803(21) allows
hearsay evidence to prove character, it does so only where
character evidence is admissible to begin with, and Rule 404(a)
provides that character evidence is not admissible to prove
action in conformity therewith.  Jones does not help L'Etoile.

[8]  L'Etoile also suggests, in a footnote, that these
statements about Hallee's reputation are evidence of a hostile
environment.  While this theory may have some merit as a general
matter, at the moment L'Etoile has not laid the necessary

14

Second, New England Finish challenges anticipated testimony from other female tapers about discriminatory comments they personally heard.  L'Etoile responds that these statements are not being offered for their truth, but to show that the environment at New England Finish was hostile.  This theory is correct, see Noviello v. City of Boston, 398 F.3d 76, 84-85 & n.2 (1st Cir. 2005), but the statements do not necessarily fit it.[9]  As noted in the previous section, the witnesses heard a number of these comments while they were employed by other companies, so they are irrelevant to working conditions at New England Finish.  And, as also noted in the previous section, see note 6, supra, insofar as the comments were heard at New England Finish, each must be analyzed independently for its relationship with what L'Etoile claims to have experienced--i.e., its probative value--before it can be admitted.  Before L'Etoile makes a detailed proffer to that effect, she may not elicit or

---

foundation to introduce the statements for that purpose, and they may be excludable under Rule 403 in any event, see Part II, supra.  For now, L'Etoile may not testify or refer to these statements without a ruling from the court that these evidentiary obstacles have been overcome.

[9]  And one of the statements has an additional layer of hearsay:  the anticipated testimony of Ralph Harriman, a representative of L'Etoile's union, as to what "he heard" from female tapers about their experiences.  That is inadmissible. See Fed. R. Evid. 805.

refer to the statements.  New England Finish's motion to exclude the statements is granted without prejudice to her making that showing at trial.

New England Finish separately challenges statements by one of L'Etoile's co-workers at the company, Gill Foley, as to sexist comments that L'Etoile "would have heard" while working there.  This is inadmissible speculation.  <u>See</u> Fed. R. Evid. 602.  Though L'Etoile makes no attempt to surmount this objection in her response to the motion in limine, she had previously--in objecting to New England Finish's motion to strike this and similar testimony from the summary judgment record[10]--argued that it was admissible lay opinion testimony. The court of appeals has ruled, however, that it is "wholly inappropriate opinion testimony" for a witness in a sexual harassment case to give "assessments of what [the plaintiff] reported to have happened" as a factual matter.  <u>Bandera v. City of Quincy</u>, 344 F.3d 47, 54 (1st Cir. 2003); <u>see also</u> Fed. R. Evid. 701(a), (b).  Foley will not be permitted to give that kind of testimony at trial.[11]

_____

[10]   The court denied that motion as moot when it ruled that, even without the challenged evidence, L'Etoile had come forward with enough proof to survive summary judgment.

[11]   The briefing on the motion to strike also raised the issue (briefly revisited at the final pre-trial conference) of

**IV.  <u>L'Etoile's motion to exclude evidence of dismissed claims</u>**

L'Etoile seeks to exclude evidence that, since commencing this action, she has voluntarily dismissed a number of causes of action, including a claim for age discrimination as well as individual discrimination claims against her former foreman and field supervisor.  New England Finish responds that the evidence is relevant "to show the nature of [L'Etoile's] claims and that they have changed over time."

There is authority treating statements made in complaints or other pleadings as admissions by a party-opponent, and therefore admissible at trial, even if the statement is withdrawn before then by amendment or otherwise.  <u>See</u>, <u>e.g.</u>, <u>Huey v. Honeywell, Inc.</u>, 82 F.3d 327, 333 (9th Cir. 1996); <u>Andrews v. Metro N. Commuter R.R. Co.</u>, 882 F.2d 705, 707 (2d Cir. 1989); <u>Sunkyong Int'l, Inc. v. Anderson Land & Livestock Co.</u>, 828 F.2d 1245, 1249 n.3 (8th Cir. 1987); 6 Charles Alan

---

whether Foley could testify to harassment he allegedly experienced, as a homosexual male, while working at New England Finish.  This testimony would not seem to be probative of the company's alleged intent to discriminate against women, and L'Etoile has not provided any authority to the contrary. Moreover, even if evidence of discrimination on the basis of sexual orientation were probative of intent to discriminate on the basis of sex, the evidence strikes the court as potentially creating unfair prejudice to New England Finish.  L'Etoile will not be permitted to introduce this evidence without (a) providing some legal authority to support it and (b) addressing the Rule 403 problem.

Wright <u>et al.</u>, <u>Federal Practice & Procedure</u> § 1476, at 558 (2d
ed. 1990).  Nevertheless, the First Circuit--albeit in a
slightly different context--has recognized that, because charges
"are dismissed for a variety of reasons, many of which are
unrelated to culpability," a court may exclude evidence of
dismissed charges under Rule 403 where it "serve[s] to confuse
the jury rather than to assist it."  <u>United States v. Marrero-
Ortiz</u>, 160 F.3d 768, 775 (1st Cir. 1998) (affirming exclusion of
evidence that local charges against defendant had been dismissed
from his trial on related federal charges).  For the moment, at
least, this court will take that approach here.

New England Finish seeks to introduce evidence that
L'Etoile dropped certain claims before trial solely for the
purpose of attacking her credibility.  As the court of appeals
recognized in <u>Marrero-Ortiz</u>, however, the fact that L'Etoile has
chosen not to pursue certain claims she originally pled does not
necessarily indicate anything about that issue.  For example,
L'Etoile explains that she dismissed the claims against her
supervisors in their individual capacity because "the law is
clear that there is no individual liability for supervisors
under Title VII," not because she changed her story that they
engaged in discriminatory behavior.  L'Etoile's dismissal of the
claims at issue, then, has little if any probative value on the

18

issue of her credibility, but carries significant risk of undue delay and waste of time as the jury hears rebuttal evidence on why she dismissed them--including, presumably, evidence harmful to New England Finish suggesting that claims not being tried had merit in the first place.  This court is also concerned that the practice of impeaching parties at trial with claims or defenses they have voluntarily withdrawn will exert a chilling effect on their efforts to narrow the case before trial--efforts that serve the interests of both courts and litigants in conducting efficient litigation.  L'Etoile's motion to exclude evidence that she dismissed certain claims before trial is granted.[12]

**V.**    **New England Finish's motion to exclude events occurring outside the limitations period**

Finally, New England Finish challenges evidence of events that L'Etoile personally experienced while working at the

---

[12]   The court notes L'Etoile's intention to introduce a statement from New England Finish's answer explaining why L'Etoile was terminated as evidence of shifting rationales for its challenged employment actions, on the theory that the company is now advancing a different explanation.  The court can perceive no meaningful distinction between offering a since-abandoned statement from the answer and offering since-abandoned statements from the complaint.  L'Etoile therefore risks opening the door to evidence of her abandoned claims if she presents evidence of New England Finish's abandoned defense.  On the record as it stands, however, it is unclear whether New England Finish made statements outside its answer giving the since-abandoned explanation for L'Etoile's termination.

company, but which occurred outside of the 300-day limitations period on her claims.  This court has already ruled that, because at least one of the events manifesting the alleged hostile work environment occurred within the limitations period, the claim is not time-barred under <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 114 (2002).  As a result, as that case makes clear, "the entire time period of the hostile environment may be considered . . . for the purposes of determining liability."  <u>Id.</u> at 117.  New England Finish's motion to exclude evidence of pre-limitations events on that basis is denied, but without prejudice to objecting to particular events on other grounds, if applicable.

<u>CONCLUSION</u>

For the foregoing reasons, the court takes the following actions on the motions in limine: document nos. 43, 45 46, and 51 are GRANTED (the latter two by assent); document no. 56 is DENIED; document nos. 44 and 47 are DENIED without prejudice as more fully explained in Part II, <u>supra</u>; document no. 57 is GRANTED in part and DENIED without prejudice in part as more fully explained in Part II, <u>supra</u>; and document no. 55 is GRANTED in part, and GRANTED without prejudice in part, as more fully explained in Part III, <u>supra</u>.

20

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:   September 10, 2008

cc:   Heather M. Burns, Esq.
      Charla B. Stevens, Esq.